First, thank you all for your flexibility on the timing of today's argument. We hope it will allow all of you to get home safely, as well as members of the court staff. I do think that the fact that we did this probably guarantees that there will be not even a flurry of snow, but better safe than sorry. So we appreciate everyone's flexibility. We're here of course for Williams v. State of Alabama. Miss Smith, whenever you're ready. Oh, my apologies. You can tell I'm just getting, just getting started today. Mr. LaCour, whenever you are ready. May it please the court, Edmund LaCour on behalf of the state of Alabama. Strickland v. Washington explains that Sixth Amendment right to counsel exists to protect the right to a fair trial. Thus, even if a petitioner's lawyer was ineffective, that ineffectiveness did not create a substantial probability of a different outcome. There's been no prejudice and thus no Sixth Amendment violation. Thornell v. Jones refocused that prejudice inquiry to what really matters, how the new mix of evidence is likely to have been weighed, not by a federal judge in his or her own moral judgment, but by the state's sentencer. That makes sense. Some states make certain crimes capital that other states do not. Likewise, not every state is going to give the same type of evidence the same weight. What matters in any given petitioner's case is how the mitigating and aggravating evidence would have likely affected his sentencer. And Thornell, that involved looking to decisions of Arizona courts. Wouldn't that effectively create, if what you say is true, 50 different standards for when Strickland prejudice exists based on the state, the law of each individual state? Your Honor, the inquiry is going to be how the evidence would have likely affected that particular sentencer. If you're convicted of murder in a state that doesn't have the death penalty, you're not going to get the death penalty in that state. If you're convicted of that crime here in Alabama, you may get the death penalty. And the same is going to be true for a particular aggravator. Some states make certain facts aggravating, others do not. Some sentencers are going to give great weight to certain types of aggravating or mitigating evidence that other states or other sentencers might not. And that makes sense because if you committed a crime and you know that sentencer is going to view that as highly, highly aggravated. So Strickland prejudice would just depend on each individual state, each state. We would evaluate Strickland prejudice differently. Yes, because it's an imaginative recreation of how things would have gone differently in that particular case at that particular time. So we already do this in other context. We would end up then with 50 different standards for when Strickland prejudice exists. No, Your Honor, it's a fact intensive inquiry. It already is. If you look at the district court's opinion when it came to certain types of evidence, the court looked to see, is this expert evidence the kind of thing that would have been available in St. Clair County in 1999? If it was, that could come in. If it wasn't, it couldn't come in, even if maybe out in Berkeley, that evidence might have been more readily available. If it wasn't available in St. Clair County in 1999, it wouldn't have come in. And what Thornell says, consistent with that insight, is that you also need to look at how that evidence likely would have affected the senator in St. Clair County, which was the Alabama courts. So in Thornell, it was Arizona courts. And that's why the Supreme Court canvassed all sorts of Arizona decisions to say, how is this mitigation evidence likely to have played in Arizona courts? And how is this aggravating evidence likely to have played in Arizona courts? That's what I was actually about to ask, is doesn't Thornell really establish just that sort of a rule? It's not as if the Supreme Court in Thornell was looking at the most similar cases across the country in any jurisdiction. It was focusing on Arizona cases. So wouldn't the Supreme Court's directive to us be that we need to look at Alabama cases to see how this evidence would have affected prejudice in Alabama rather than in, say, California? Absolutely, Your Honor. That is absolutely our reading of Thornell. Again, the court said that Mr. Jones and his amici could not come up with a single case in which a defendant with his aggravators had been able to get the Arizona Supreme Court to vacate a sentence of death, which strongly suggested that the mitigation evidence that he was presenting would not have made any difference. And the same thing is true here. I think there were four separate Thornell errors made by the district court. The first is undervaluing the aggravating evidence. The second is overvaluing this propensity evidence. The third would be misreading or totally whiffing on how the future dangerousness inquiry should have gone with the Alabama courts. And then the fourth is to overvalue the mitigating evidence by not considering victim impact evidence whatsoever and how that would have muted the mitigating evidence that Mr. Williams introduced in his 1998 evidentiary hearing in federal court. So I'll start with the first, the aggravation. In Thornell, it seems to me the court said that the Ninth Circuit's view of the mitigating evidence was cumulative. And that was the basis for its decision that it misapplied strickling prejudice. There were several errors the Ninth Circuit made. And then when the court conducted its own inquiry, when the court conducted its own analysis, it looked, the U.S. Supreme Court looked to Arizona courts. And so that's what this court needs to do as well, needs to look to what the state sentencers in Marcus Williams's case likely would have thought of this evidence. But it did say that the additional mitigating evidence in Thornell was cumulative of what mitigating evidence was already admitted into the case. And that was the basis for its determination that the Ninth Circuit misapplied the strickling prejudice standard. Am I incorrect about that? That may have been one of the errors, Your Honor, but again, the court didn't just stop there. It went on and conducted its own prejudice analysis. And by doing so, set the rule for this court and all lower courts as to how to conduct a prejudice analysis in the thankfully somewhat rare circumstance where we have a federal court conducting de novo prejudice review of a state conviction. And again, we're trying to figure out, would the outcome likely have been different in state court? So we look to state court. And to get to the state court decisions, I'd point you first to Osgood v. State, a court of criminal appeals decision that helps establish just how seriously Alabama sentencers take rape murder as an aggravator. It's not just a factor. It is one of the most heinous aggravators that can be proven. And so in Osgood's case, he had every piece of mitigation evidence that Marcus Williams had. He had these horrific adoptive parents who would abandon he and his sister at bars while the mother ran off with strange men. He witnessed his five-year-old sister being forced to perform oral sex in a bar on a stranger. He himself was forced to do the same later. He faced sexual abuse throughout his childhood at age nine. He was having sexual relations with other children at age 14. He impregnated a 24-year-old. He had meth addiction. He had alcohol addiction. Even still, the court of criminal appeals, in a unanimous decision, said they were convinced that the one aggravator of murder rape outweighed all that mitigation evidence. And the same thing is true here. And the court relied on several other Alabama court of criminal appeals decisions spanning decades where rape murder was found sufficient to justify a death sentence. Because in Alabama, the sentencers take that very seriously. And then look at the aggravation here. Marcus Williams, again, in the dead of night, November 6th, one in the morning, he's decided he wants sex. He couldn't get it voluntarily from anyone. So he knows that Melanie is on her own because his mom's apartment was one number off from hers, 141 versus 140. So he goes in through the window, grabs the knife because he's not going to be denied, climbs up the stairs, removing his pants, steps over the baby gate. So he knows there are kids in the house. And if there was no doubt, he knew it when he looked in to make sure they were asleep. Two-year-old William and 15-month-old Kirsten. Checks on them. They're not going to be witnesses, at least for now. Goes across the hall to Melanie's room, and she wakes up with this man much larger than she is. She weighed 119 pounds. Coroner testified to that. He rips off her shorts, pummels her, slits her with the knife, chokes the life out of her, and then rapes her body for 15 to 20 minutes. Ejaculates on her stomach, grabs her purse, and leaves. The district court looked at this, and early in the opinion says this was a heinous sexual crime. We agree with that. But then later, inexplicably says it's not highly aggravated. Well, how do we know that? Oh, we don't, unless you're just looking within. But you're not supposed to do that. The judges are supposed to look to state sentencers in Alabama. This is highly aggravated. There can be no doubt about that. There's no answer in my friend's brief in response to Osgoode v. State. And because of that, I think this is an easy reversal and should be done quickly because this case has gone on for way too long. But the second Thornell error is overvaluing this mitigation evidence, this propensity evidence. Alabama cases confirm that trying to prove that your client is particularly inclined to violence or sexual violence is the paradigm of double-edged evidence. Look at Woodward v. State. There, quote, Woodward alleged that his counsel should have presented expert testimony about risk factors in his life. An expert could have testified that risk factors such as the ones in Woodward's life impair a person's ability to cope or bounce back with resilience and render a person unable to manage crises and conflicts in life. That certain risk factors like poverty, parental abuse, and exposure to violence make it much more likely that a person will engage in violent criminal behavior. That the confluence of risk factors in Mr. Woodward's background dramatically increased the risk that he would engage in violent criminal conduct. And that the numerous risk factors in Mario Woodward's life overwhelmed him and left him impaired and exceptionally vulnerable to engage in violent acts. It sounds a lot like what Dr. Benedict says. It sounds a lot like what Dr. Mendel said in the federal district court. And the court of criminal appeals didn't care. What they said is Woodward's claim appears to be that his counsel should have presented expert testimony that he was prone to violent criminal conduct. Such testimony, however, clearly presents a double-edged sword. I agree. I have a hard time seeing how testimony about Mr. Williams' hypersexuality and violence would have helped him rather than hurt his cause. I think you're right that that is a double-edged sword. To me, this is almost the archetypal case where that might be in play. Right. I think it maps on perfectly to Wong v. Belmontes. Where the Supreme Court was dealing with Mr. Belmontes who said, well, my counsel at trial presented this narrow mitigation strategy and there's so much more that could have been said. And what the Supreme Court recognized was the elephant in the courtroom was that in addition to bringing in more of his bad, sad upbringing, it would have brought in evidence of a second murder, which the Supreme Court said was the worst kind of evidence. Well, if that's the worst kind of evidence, evidence of a second violent, torturous sexual assault, like what Marcus Williams did to Lottie Turner 18 days after he snuffed the life out of Melanie Rowell, would have been among the worst types of evidence you could bring forward. And so, again, I don't think the district court ever really grappled with that. I don't see that in the opinion other than this idea that this is perfectly consistent with his theory of psychological unraveling and a plea for help. But there's no limit to that. If he had chopped Lottie Turner up into 100 pieces, that would be a plea for help? Of course not. And maybe you could have some discussions in the Berkeley Law School faculty lounge about free will and whether this is persuasive or not. But in Alabama courts, they're not going to see it that way. We know that from Woodward. We know that from other decisions likewise. So this type of propensity evidence is, again, the paradigm of double-edged evidence that could actually lead the jury to take less pity. So what remedy are you seeking then? You're asking us to remand this case to the district court? No, you need to reverse, and this needs to be over with. Let me finish asking the question. If there's a new standard, which you say there's a new standard, the district court ought to have the opportunity in the first instance to evaluate this case under this new standard where it conducted an evidentiary hearing, right? Three points, Your Honor. One, it's a legal standard, and so you are just as well equipped as a district judge to go ahead and do that analysis. Two, that's exactly what happened in Thorne L.V. Jones. Don't you have to make certain findings of fact? You don't have to touch the facts here. You can just reweigh the evidence. We know that Lottie Turner was sexually assaulted by Marcus Williams for hours and hours and begged to God for her life and luckily escaped with her life. Nothing new is going to come out. If you send it back, this case was filed in 2007. Judge Boudry heard the case. She is retired. She's not even on the bench anymore. We're going to be talking about another five to 10 years of waiting. Melanie's kids already have kids. This has gone on for far too long. It would be a grave injustice for this to go on any further when you are already well equipped in light of Osgoode v. State, in light of Woodward, in light of these other state cases that Marcus Williams has presented no response to in his supplemental brief to go ahead and reverse and to do it quickly. If we were to find that there was no prejudice here from what all three of us agreed before was a deficient performance by the attorneys, that wouldn't in any way bless the attorney's failure to develop an appropriate mitigation case, would it? Correct, Your Honor. That would not change. It would not change that at all. You wouldn't have to opine on deficiency in your new opinion. You could if you wanted to as guidance going forward, but I think I'm prejudiced. It's quite common for the court to resolve strickling claims on one or the other prong rather than feeling the need to touch on both or or in this case to bless the performance when it's clear based on all the additional evidence in the three day evidentiary hearing before the district court that this new evidence would not have made a difference. If we make a determination that, well, maybe Thornell was just peculiar to the Ninth Circuit case, there's no change in the Strickland prejudice analysis. And if there's no change in the Strickland prejudice analysis, then our decision below would remain the same, right? I mean, we can just like change our minds. Your Honor, I think Thornell clearly focused and disciplined the prejudice analysis. I was, I've not seen many other decisions where the court has. It wasn't clearly. Judge Justice Alito didn't clearly say that in there. He did not say I don't read anything in the opinion that says we're changing the Strickland prejudice analysis. And it seems to me that if that's what he was doing, that would be pretty monumental. He would have said it in the opinion and the dissenters would have, you know, they would have yelled and screamed about that. Or maybe they recognize that this is the correct analysis and federal courts had strayed from it. And it'd become a sort of untethered academic exercise when really it needs to be tethered to a time and a place. Because if nothing would have changed in St. Cloud County in 1999, based on this new evidence, it doesn't matter how bad his lawyers were. He hasn't been denied a fair trial. That outcome is still a fair outcome because what he did was just that bad. Some crimes are just that bad that you could have Clarence Darrow come out and build a mitigation case for you. And it's not going to make a difference. And this is one of those cases. We know that because Alabama courts have said it again and again and again, most specifically in Osgoode, which has eerie similarities to Mr. Williams's case. The only differences is that his background was even more deprived and more shocking than anything Marcus Williams was able to introduce to the federal court. And I do think the teachings of Thornell are quite clear. What the Supreme Court said was that pointing to several Arizona decisions to confirm that Jones's aggravating evidence, quote, was given great weight in Arizona. And then the court held, quote, Jones and his amici identify no cases in which the Arizona Supreme Court has vacated the judgment of death in a case involving the aggravators at issue in Jones's case. And the court continued, quote, The absence of such a case strongly suggests that Jones has no reasonable probability of escaping the death penalty. I don't see how you could apply any different analysis here now that the Supreme Court has spoken. There's a reason, presumably, that they granted our petition, vacated the 2023 decision and remanded for further consideration in light of Thornell. It wasn't because Thornell didn't say anything new. And so the third Thornell error was how future dangerousness. You know, the Supreme Court didn't reverse us. They sent it back for us to take Thornell into consideration. Yes, because Thornell is binding precedent. And I think Thornell focused that Strickland prejudice analysis in in a new way, in a clear way. The Supreme Court could not have said that we did not properly evaluate Strickland prejudice in our case. I think they could have done a procuring reversal opinion. They opted not to do that. They don't do that very often. But instead, they sent it back and said, we've said something in Thornell and you all need to take a look at it. And and I do think, again, in light of the language and in light of the clear import of the analysis, what you need to be doing is thinking, how would this likely have played with the state sentencer in Arizona? It was Arizona courts in Alabama back in 1999. It was Alabama courts. And so that's where the analysis takes you. The third problem with the district court's analysis, if you look to Alabama courts that the court may have, the federal court may have avoided, was looking at future dangerousness. In Floyd v. State, the Alabama Court of Criminal Appeals said that future dangerousness is of inestimable concern at the penalty phase. The district court, and that includes cases that are made capital already, where there are only two possible outcomes, death or life without parole. Despite that, the district court said that this evidence of future dangerousness was minimized because Marcus Williams was going to spend the rest of his life behind bars. Well, that was true in Floyd v. State. That's true in any number of court of criminal appeals cases where future dangerousness has been given great weight, has been treated as a subject of inestimable concern. And isn't that for good reason? I mean, don't we have to take account of the safety, not only of citizens outside of jail, but of people who are in jail, right? Absolutely. Their lives and health also make a difference and are also something that we need to consider when determining the future dangerousness of a particular defendant. Absolutely, Your Honor, and that's how Alabama courts approach it. And that's true both for the safety of prisoners and also for corrections officers, mental health officials, for nurses and other people who work in the prison and might be exposed to Marcus Williams or other violent criminals. And so the district court's future dangerousness analysis is, again, just completely whiffed in that respect. And failed to take into account, too, that the new evidence from 2018, in addition to showing new evidence of sexual violence, also just showed him to be a far more dangerous and aggressive person writ large. His own experts were testifying that he was particularly aggressive. He had fact witnesses who had known him who said he'd been suspended from school for fighting on multiple occasions. Obviously, he was kicked out of Job Corps for fighting. One of his best friends said he would fight at the drop of a hat, things other people would brush off, he would explode about. That's the kind of thing you want to know before you put someone into an explosive setting like a prison where not everybody's always on their best manners. And so I think the court completely missed on that. The other thing, a very clear error the district court made, was to consider evidence that was developed after 1999 in assessing future dangerousness. The court said, well, if there was a resentencing today, Williams could point to his great record with no disciplinaries on death row from 1999 up until 2018. But, of course, that wasn't available in 1999 because none of that had happened yet. You could see that as a clear error of fact or just a complete clear legal error where the court considered evidence that clearly was not something that should be considered. But that is an independent reason to reverse as well. And then fourth error was overvaluing the mitigation evidence about the sad childhood upbringing of Mr. Williams by failing to recognize that would have invited devastating victim impact evidence to rebut it. And this happens a lot in Alabama courts, including in McMillan v. State, where the court explained was sort of recounting cases where, quote, testimony from the victim's family as to the harm to children, grandchildren, and planned children caused by the victim's loss was proper rebuttal testimony for the mitigating evidence offered by Woods, i.e. that he was the father of three children whom he loved. Likewise here, if Mr. Williams had said that his greatest trauma, and this is what his experts testified to, his greatest trauma was not having his mother around, feeling abandoned by his mother. Well, the obvious rebuttal is, think of William, think of Kirsten. They're not only going to not see their mother very often, they are never going to see her again. And so you of all people, Marcus Williams, should have known what you were doing to these kids you looked in on right before you crossed over to the hall, climbed on top of their mother, and then took her away from them forever. That's what the jury would have heard. That's what the judge would have heard, and it would have taken any of the sting for the state out of his mitigation evidence. This is what happens in Alabama courts, and that's how we view crimes like this. That's how the Alabama senators view crimes like this. So he knew this was devastating, and also, if you look at his own briefing and his direct appeal, I mean his second issue was arguing that the trial court should have granted the motion in limine to keep out Donna Rowell's testimony about finding Kirsten in the bedroom with her mother, who was dead, because he recognized this was particularly damaging testimony for him. Even in his habeas petition in federal court, one of his issues was that he violated his rights due process because his victim impact testimony came in. He knew it was powerful. There's no denying it's powerful. And I think that's why the district court just had to ignore it, because there's not a good answer to it. But this court can't ignore it. Payton v. Tennessee says, do not turn the victims into faceless strangers. They deserve to be considered too. And even though their presence and the impact that Marcus Williams had on them was only present on a cold record in 2018, while Marcus Williams and his family all got to testify live in front of the federal district court, that victim impact testimony still has to be given away the Alabama senator would have given it back in 1999. And finally, there's just the Wong v. Balmonte's problem that we were discussing earlier. Again, the worst possible evidence for Mr. Balmonte's would have been evidence of that second murder coming in. Worst possible evidence for Mr. Williams would have been evidence of that second violent sexual abuse coming in. And I think the district court, again, failed to conduct a proper reweighing, whether you're thinking about this as a matter of looking to the Alabama courts or just looking to federal law writ large. The court said that it was considering the old mitigation, old aggravation, along with new aggravation and new mitigation, but never really thought about how that new evidence would have completely gutted the old mitigation. So you can't just add them together, because they interact in complex ways, and that old mitigation included his lack of significant criminal history, that old mitigation included his remorsefulness. Well, of course, none of that is going to carry any weight whatsoever after you learn he wasn't remorseful, he just killed a woman. You think maybe that would cause him to wake up, maybe he finally hit rock bottom, maybe he needs to stop drinking, stop drugging, and get his life together. No, no, he kept going, and he went and did the same thing to Lottie Turner 18 days later, with the exception that she survived. So, no remorsefulness anymore, he loses that, and of course, that's pretty significant criminal history to torture this woman sexually until the sun comes up. So, for all those reasons, and the district court's errors are inexplicable in my view, but certainly after Thornton LV Jones, reversal is easy and should come quickly. Thank you. Miss Smith, now it's your turn. Sorry. Good afternoon, may it please the court. I'm Leslie Smith and I'm here on behalf of Marcus Williams. Supreme Court sent this case back to allow this court to revisit its judgment about Mr. Williams penalty phase and effective assistance of counsel claim in light of Thornton LV Jones. While I contend that affirmance of this court's prior judgment is appropriate, and that the majority got the analysis right the first time. I think remand presents an opportunity for this court to revise this opinion, if it so chooses to make clearer that it thoughtfully and thoroughly consider the good and bad evidence and arriving at his decision to grant relief. The facts are the same. This court did not identify any clear error, last time, and the law hasn't changed either. And so, in response to my friend's argument, I would like to start with Thornton LV Jones and what it said, because I think it's critical to this court consider what the Supreme Court of the United States said and what it didn't say. May I ask one question for you to please keep in mind as you engage in the discussion you're about to have, which is, if the law didn't change at all, why would the Supreme Court have vacated our opinion and remanded it for further consideration. Well, the GDR is an opportunity for this court to consider its earlier opinion in light of law that it did not have before the first time it considered the case, but it does not suggest anything about the merits of the decision. Rather, again, it's an opportunity for this court to look at Thornell and see if it has any application to what it said the first time. And my argument is that Thornell is essentially Strickland, and that Thornell did not alter Strickland's analysis in any meaningful way. From your brief, please correct me if I'm wrong, it doesn't necessarily seem that you disagree that what we need to look at are Alabama cases that may be similar to the situation here. It seems more that you're arguing about what those cases show. Is my interpretation of that correct? I think my friend and I have a fundamental disagreement about the extent to which state law is dispositive in the Strickland prejudice analysis after Thornell v. Jones. So, Strickland tells us that we have to presume that a judge or jury has acted according to the law. It says also that the governing legal standard plays a critical role in that decision. It also assumes a rational decision maker. All of that means is that we have a federal constitutional standard that applies in jurisdictions. It does not, as my friend suggested, suggest that there is an Alabama specific standard. I agree with you there. I don't think there's an Alabama specific standard, but it seems to me from reading Thornell that when we are applying the singular standard that applies everywhere, when we're evaluating the prejudice question, we are to look at Alabama cases rather than California cases or even Georgia cases. Do you disagree with that? Well, I would answer by pointing to the facts in Thornell, which arose out of Arizona, and note for the court specifically what Petitioner there argued, which was that it was important for the court in analyzing prejudice to evaluate through the lens of Arizona's law. That was so because there were a host of cases in Arizona which spoke specifically to the way that those courts accorded to aggravating circumstances that were present in that case and mitigating circumstances. That is not the situation we have here, where my friend has identified a case or two which happen to suggest that prejudice is inappropriate in certain circumstances. We do not have that line of precedent which suggests that Alabama would consistently rule one way or the other. I'm less certain of that than you. I think aside from the cases that we've discussed already, I think in Hosch v. State from 2013, the trial court gave, quote, very little weight to evidence that the defendant was raised in a dysfunctional family, had few positive male role models, grew up around criminals and violence, and had a substance abuse problem. Woodrow v. State in 2012, the sentencing judge clearly gave little weight to the non-statutory mitigating circumstances. Then McNabb from 2007, Flowers from 2005, James from 2010, and even Lamb-Long v. State from 2015. That seems to me to be a pretty robust body of law showing us how Alabama courts typically treat and evaluate mitigating evidence. Why don't you think that that's enough for us to make a fair judgment about what Alabama courts think? I think there is a lack of clarity in Alabama law which suggests that Alabama courts consistently disregard the categories of evidence that are present in Mr. Williams' case. I understand your point, Your Honor, about these cases which happen to speak to various aspects of certain types of mitigation, but I don't think we have the strong record of precedent in Alabama that was present in Thornel v. Jones. I would also suggest that if the rule my friend suggests were at issue, that there was a state-specific or jurisdiction-specific disposition to discount certain categories of mitigating evidence, that that would run afoul of the Constitution. The Eighth Amendment requires that courts not only allow defendants to present mitigating evidence, but also that the sentencers are obligated to actually listen to it. If there were a rule or a precedent which suggested that Alabama courts categorically would disregard certain types of mitigating evidence, that would be a constitutional violation in itself. I'm not sure that I would read those cases as disregarding it so much as saying that in the context of the other evidence in those cases, especially with regards to aggravating evidence or other factors, it simply doesn't outweigh. I think that's a little bit different than just saying it doesn't matter. Well, Your Honor, again, Strickland is a context-specific standard which requires an individual consideration of a person's background and characteristics. It seems antithetical to that, to say we're going to disregard or consistently give less weight to this category of evidence if you're looking at an individual's case. What about the argument specifically here, and I apologize my microphone is acting up a little bit. What about the evidence specifically here that it would have perhaps presented that double-edged sword proving that Mr. Williams was a violent person or a hypersexual person? Wouldn't taking account of that double-edged sword be the kind of particularized examination that we can assume the trial court would have made? I don't think so, Your Honor. Again, looking at Mr. Williams' specific case, you had a child who was the victim himself of sexual abuse. And when I was here last time, I think we discussed the absence of an explanation for what was apparently a senseless, deliberate act. The explanation here is that traumatized child who developed an admittedly very maladaptive way of coping, which resulted in a sexually violent offense, two sexually violent offenses. So if we're talking about double-edged, I think the explanation was critical because this man's lawyer stood up at his trial, at his sentencing, and said to a jury, I don't know why this man did this. I don't know why anybody would do this. The absence of that explanation condemned Mr. Williams to death. I think the explanation explains why he did it. And it is critical to his mitigation story. And so, I guess the other thing I would say... Wouldn't offering that explanation have opened the door to his violent offense that took place only 18 days later? I would wonder, even if the attorneys had done a sufficient job of developing this mitigation case, which I'll reemphasize, in my view, they did not. But even if they had, I find myself wondering if they would have really wanted to open the door to this other evidence, which seems to me to be very harmful for Mr. Williams in front of the sentencing entity. Over the span of 18 days, Mr. Williams committed two acts of sexual violence, one which resulted in a murder, one which resulted in an attempted rape. I don't know that it's fair to say, to put that in the passive. I mean, it didn't result in a murder, he murdered and he raped, right? Yes, ma'am. Thank you. He did both those things. But he did not have the sort of violent criminal history or any criminal history apart from those offenses which occurred 18 days apart. He was 21 years old, so relatively close to the childhood that it traumatized him and it caused him to commit those violent acts. I would also point out that even if the court might be right to view some of this evidence as double edged, that would not be dispositive. Because the issue is whether the available mitigating evidence, whether susceptible to multiple interpretations or not, might have sufficiently influenced the jury's appraisal of Mr. Williams' moral culpability. And this is not, again, an outcome determinative test. And the new evidence didn't need to make him any more likable to the jury, so long as it helped them understand him. And I'm paraphrasing there from Sears v. Upton, from the United States Supreme Court. So it's not that mitigating evidence has to be entirely positive. It's not that it can't be capable of more than one interpretation. The other interpretation might have some negative impact. That doesn't mean that it's not material mitigating evidence that a center search should consider relevant to determining whether someone should be put to death. I have a hard time understanding the rule you're proposing as anything other than this. And maybe you can tell me if I'm if I'm correct or if I'm incorrect. Why? It seems that you're saying no matter how heinous the crime, so long as there is any material evidence that theoretically could affect the jury, then the death sentence should be vacated because of an inappropriate mitigation case under Strickland. Is that the rule that you think applies here? No, ma'am. And how is your how is your proposal different than what that rule would demand? Again, if we are talking about and we are an individualized analysis based on Mr. Williams individual characteristics and life history. My point is simply the explanation for his sexual violence is relevant evidence that a sentence or needed to consider in deciding whether he should be sentenced to death or to life without parole. And that's not the Smith's rule that's the Supreme Court of the United States. But in in Thornell, it seemed like the Supreme Court was saying we need to look at similar cases from this jurisdiction and determine what the prejudice inquiry looks like in this jurisdiction. And it seems to me that from looking at Alabama cases, this is not a case where an Alabama court or an Alabama jury would have been likely to find prejudice under these individual circumstances that as horrific as Mr. I never know how to say that. It's, you know, it's horrible to realize what sometimes children go through, but it seems to me at least that his circumstances were not as dire as those. As we compare them to as we compare the evidence in this case, both of aggravating factors and of mitigating evidence seems to me that this case is more similar to cases in Alabama, where the mitigating evidence has not resulted in a finding of prejudice. You know, can you can you tell me why or if we don't look to those Alabama cases, what cases we should look to to find to find the answer? I think we just disagree about how relevant those Alabama cases are, especially given what Thornell considered and what it actually said. So, getting back to Thornell, the court said that most of the mitigating evidence that Jones presented was not new and what was new would not carry much weight in Arizona courts. It had a host of cases from Arizona, which talked about how that how that court had evaluated certain categories and mitigating evidence. And as a result, it said there's no reasonable probability that evidence on which Jones relied would have altered the outcome. But the other thing that makes Jones different from Mr. Williams case is Jones had four aggravating circumstances. And so the court also looked at the aggravating circumstances as they had been evaluated by Arizona courts and said that many of those were entitled to great weight. Again, we don't have that here. We have not only do we not have that long line of cases which say the particular aggravating circumstances are entitled to great weight. We also don't have four aggravating circumstances. We have one, and we have the potential for evidence of Mr. Williams prior criminal history to be added to that balance. Didn't the trial court indicate that it was almost I can't remember the exact term but one plus because although he only counted it as one aggravator. There were really two intermixed. No ma'am I don't believe that's correct. My recollection is that there was one aggravating circumstance, which track the underlying offense. And he did not consider the second offense as an aggravating circumstance because it's not an aggravating circumstance. The birds of the burglary and rape you don't think that those even arguably count as to aggravating circumstances. The second aggravating circumstance, the rather the second offense. Did not count at Mr. Williams original sentencing as an aggravator because it was not prior Alabama cases say that in order to be counted as a prior offense. He has to have a conviction before the sentencing and he did not have a conviction before the sentencing. So it didn't count as an aggravating circumstance the court did consider it however in determining whether Mr. Williams actions were deliberate. We said previously in our prior opinion that the trial court found one aggravating circumstance, the murder was committed during a rape. And one statutory mitigating circumstance that he had no significant history of prior criminal conduct, and then for non statutory mitigating circumstances, would that be correct. Yes, sir. Although the district courts found that the single aggravating circumstance applied quote, in two ways, doesn't that suggest that the district court took account, both of the rape and the, and the rape and murder during a burglary. I can only recount, based on my recollection from the sentencing transcript itself. And there was one statutory aggravating circumstance, and the prior, prior criminal history. He was found as a statutory mitigating circumstances stance to have no prior criminal history. So, it did not count. So on page 630 of the transcript line 14. The judge said the court finds the existence of this aggravating circumstance in two ways, and that the capital offense was committed during a rape, and during a burglary. That was miserable.  the other. Sorry, I'm not sure I'm sorry I don't understand that. Excuse me, I didn't understand the DPS like a pronoun, the other. I didn't understand the sentence. So the single aggravating circumstance related to the crime against Melanie rival, who was a victim who was murdered. This is the sentencing transcript from the trial for the rape and murder of Miss Raul. Yes. Right, and it says the court finds the existence of this aggravating circumstance in two ways, and that the capital offense was committed during a rape and during a burglary. So that suggests very explicitly that, although the court counted it as an aggravating circumstance. In reality the court was taking account of both the rape and the burglary at the same time as the murder.  I only know that there was a single aggravating circumstance I'm not sure what it counting for in two ways means, but there was one on only one statutory aggravating circumstance. Thank you. As far as the point that you made about the evidence in the Cornell being cumulative wasn't the evidence, the additional evidence developed here. Largely a matter of degree rather than kind, there was already significant evidence of the admittedly terrible childhood of Mr. Williams, but tell me why this evidence wasn't cumulative in the same way that we've seen in other cases. Well, in Cornell, the cumulative finding happened because the Mr. Jones presented substantial mitigating evidence at trial, that was not the case in this at Mr. Williams trial, which this court acknowledged in its earlier opinion. But Williams mother and his aunt testified during the original penalty phase about Williams difficult childhood, including his abandonment by his father, his lack of a stable home, and his sense of sadness and abandonment when his mother left him to be cared for by relatives. Why, why don't you count that as at least substantial mitigating evidence, it's not as if there was nothing at the trial. Well, I think we can disagree on that point. What I mean I just read to you what was what was expressed you may or may not agree that it's enough but it's certainly nothing it's certainly not nothing to witnesses testifying about his very difficult childhood. I think they did not testify accurately about his difficult childhood, I think they tested very cursorily about his childhood, very what course cursorily in a cursory manner, Your Honor. So, you know, that testimony was very misleading, because it omitted so much about what his childhood actually was. It was a childhood of extreme deprivation, being raised by alcoholic relatives, a mother who was absent, a mother who left him to be preyed upon by someone who raped him. None of that was expressed at trial. So, while I agree and understand that two people testified, there was a trench of evidence that they omitted because of counsel's ineffectiveness and I think this court has spoken to that. In its earlier opinion, the omission of that evidence and why it was so harmful, especially in a case like this which involved crimes of sexual violence. I  unless the court has other questions I can close. Please feel free. The Supreme Court has said that even if it is possible that a jury could have heard all of the mitigating evidence and still have decided on the death penalty that is not the test. We do not require a defendant to show that a counsel's deficient performance, more likely than not, or to the outcome of this penalty proceeding. I think. Thornell v. Jones does not change Strickland. Strickland is still the standard. Strickland does not establish any sort of requirement that we look exclusively to Alabama cases to decide how a senator would evaluate this new evidence. And so, because our facts are the same. We have not identified any clear error in this record. And the law hasn't changed, I would implore this court to, again, affirm that Mr. Williams was denied effective assistance at his trial and grant relief. Thank you. Thank you. Mr core you've reserved five minutes. Thank you, Your Honors, a few points, the law has clearly been clarified for now looks to state court decisions repeatedly. If you look to the district courts analysis even if you look to the briefing that we provided to this court and to this court's 2023 opinion there's not that kind of searching analysis of the state court decision so I do think we have new law we have new arguments and there should be a new outcome in this case. Second, my friend was talking about how this case is different because there was only one aggravator, not multiple aggravators that's not the test not in Alabama and not recognized by this court. I'm going back to 1983 Alabama Court of Criminal Appeals decision was the state. The court said one aggravating circumstance may outweigh any amount of mitigating evidence or any number of statutory mitigating circumstances. So to the extent the district court thought that this was not aggravated because there was only one aggravator that's just clearly wrong. And the other way the court failed to apply prejudice correctly was seen in Floyd be state which says, look at all the facts and all the circumstances so you might just have one aggravator that makes a case death eligible then you can consider all the facts was this. What type of rape murder was this was this someone that he knew, and there was some like unfortunate circumstance where they got mixed up and somebody died or is this in praying on a young mother with two young children. One of those might be seen as more aggravating the other all the specs and circumstances are relevant even if there's only one aggravator present in the case. And then, next, she said there's no clear error in the record that there is clear error from the district court the district court, and this sort of goes to what you were talking about just a moment ago judge grant the discord said that the jury never heard about Williams being abandoned about how this had a psychological effect on him that's clearly wrong Eloise testified to this quite persuasively. She said he did not have a good home life he went from one family to another with his mother and then with his aunt and then with his uncle and then with his great grandmother, sometimes with his mother again in her words, he did not have a stable home. His mother quote did not know a lot about motherhood and responsibilities. She had a hard time. He was left from one place to another. He testified his mother would rarely visit him just out and in when she did come, and then he had a difficult time because he missed his mother he was quote sad and withdrawn. He quote he wanted to be with his mother he told me that quote he felt like his mother didn't care that led him to become a withdrawn child a loner depressed and in need of counseling. So, yes, that's clear the jury heard that he was abandoned by his mother, and this affected him psychologically didn't hear from a Harvard educated expert to come in and say, you know it's pretty hard when kids don't have their mom and dad around, but you'll need an expert to know that common sense can tell you that, and a great aunt who raised him for many, many years might be a much more powerful messenger to deliver that message than some expert from Chapel Hill. And then, next up, they've identified no case, state or federal, where a second violent sexual assault or second murder. So breezily written off as not aggravating that they're just, I can't imagine a court, making that decision I think the district Supreme Court's decision this case is the first time I've seen that colon V pinholster from the US Supreme Court suggests just the opposite, that this sort of propensity of and particularly if it's going to come in with this vivid victim impact testimony from a new victim Lottie Turner is going to suggest that defendant is beyond rehabilitation is unlikely to help him out with the jury. I think the import of my friend's position is that they're going to be some people out there who have such a bad background that no matter what they do, they're not going to be death penalty eligible and that that doesn't make any sense there are going to be certain people who are going to find that they are deserving of the ultimate penalty. And indeed, it's the rare criminal defendant who had a really happy life growing up and then goes on to become a violent serial rapist and a murderer. And finally, I mean no one has a right to have their mitigation evidence given a certain weight yes they have a right to have it considered, but in some places it's just not going to go very far. There's no evidence to there's no there's no reason to think that Alabama courts are not considering this type of evidence but there is plenty of reason to think that they're not giving it a whole lot of weight, and the Constitution allows them to make that moral judgment. Finally, if you look at the two cases, there are two different profiles that could have been presented there's the profile in 1999. So blesses more approach, where you still did here this was this was a boy who was never knew his father's father one nothing to do with them his mother left them feeling alone abandoned depressed. He had dreams of becoming a ballplayer that he lost when his knee was blown out he was going to graduate from high school, learn so he's not going to graduate, two weeks beforehand, tries to straighten up falls off the straight and narrow ends up making this decision, or you go with a new strategy, which is that he is just so incorrigibly violent and beyond repair that he had to kill her because he had to kill Melanie route because it just felt really good was quote, very reassuring. And then he went and reassured himself again at the expense of Lottie Turner. I cannot imagine any competent attorney deciding to go through that second door rather than the first, and that strongly suggest there's no prejudice here. I just got one question for you, given that the Supreme Court itself over the descent of some justices but in any event, the Supreme Court reweight the evidence itself Is there any reason that we couldn't or shouldn't do that here, you judge has nothing about this case, and then an inevitable appeal, and then you all apply and de novo review to that next question of fact and law the facts aren't going to change. And so, you all will have to make the decision. And for the sake of justice, you should do it now. Thank you. Thank you. We appreciate the arguments from both the council and this court is recess.